FILED
 2013 Dec-10  AM 09:33
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **ROCCO J. LEO, Trustee for** ) <br> **the Bankruptcy Estate of** ) <br> **ASHLEY MURPHREE** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br>     v. ) <br> ) <br> **ALFA MUTUAL INSURANCE** ) <br> **COMPANY, et al.** ) <br> ) <br>     **Defendants.** ) | NO. 1:13-cv-01826-RBP |

### MEMORANDUM OPINION

This cause comes before the court on defendants Rebecca A. Walker's ("Walker") and Stephanie Wagner's ("Wagner") (the "individual defendants") separate Motions to Dismiss the Complaint[1] filed on October 28, 2013. After careful consideration, the court determines these motions are due to be DENIED in part and GRANTED in part.

### PLAINTIFF'S CLAIMS

The plaintiff, Rocco J. Leo, is the trustee for the bankruptcy estate of Ashley Murphree ("Murphree"). In this capacity, he brings suit against the individual defendants and ALFA Mutual Insurance Company ("ALFA"). The complaint alleges as follows.

Charles Burges held an ALFA automobile liability insurance policy on an automobile of which Murphree was a permissive user. This policy had $100,000 in liability coverage for bodily injury. On January 25, 2010, Murphree and Willow Jo Cameron ("Cameron") had a two car accident which was promptly reported to ALFA. Cameron suffered $265,000 in medical

---

[1] These motions are substantively identical, and the parties treated them as a single motion in their briefs. The court will do likewise.

bills as a result of the accident.

Cameron filed suit against Murphree in state court on April 1, 2010. ALFA then provided Murphree with an attorney, Walker. During the course of the law suit, Cameron's attorneys sent Walker six letters regarding his client's policy limits demand. On October 13, 2010, Cameron's counsel, Ted Mann, notified Walker that they were "mak[ing] a policy limits demand of the $100,000 of available insurance coverage." (Doc. 1-2). The next month he reiterated that he "would be happy to entertain payment of policy limits to settle this case." (Doc. 1-3). In March 2012, Cameron's counsel, now Robert Potter, notified Walker that the policy limit offer would remain open for fourteen days and they would seek any excess judgment against Murphree personally. (Doc. 1-4). On August 10, 2012, Potter requested that Walker inform Murphree that Cameron's medical expenses exceeded the policy limits, that Cameron had made a policy limits demand, that any excess judgment would be enforced against Murphree personally, and that Murphree had the right to independent counsel. (Doc. 1-5). In January 2013, Potter again requested that Walker inform her client of his policy limits demand. (Doc. 1-7). Walker never passed on the contents of these letters to Murphree.

On May, 6, 2013, a jury found Murphree liable in the amount of $260,000. After the verdict, Walker and Wagner advised Murphree to file a petition in bankruptcy and said that ALFA would pay the bankruptcy costs. In connection with the bankruptcy, the individual defendants created an ALFA-approved contract for Murphree titled "REQUEST FOR ASSISTANCE IN FILING FOR BANKRUPTCY AND COVENANT NOT TO SUE" ("Covenant Not to Sue"). The Covenant Not to Sue provided that in consideration of the assistance with the $1,200 bankruptcy fees, Murphree agreed not to institute any cause of action for damages resulting from the jury verdict or from the bankruptcy action. (Doc 1-8). Without

reading the one-page document, Murphree signed it exactly one week after the jury verdict against her.

In May 2013, Murphree, through her newly provided attorney, filed a Chapter 7 bankruptcy petition. The individual defendants did not timely file a Motion for New Trial or a Notice of Appeal after the jury verdict.

Count I of the complaint alleges that the Covenant Not to Sue is a fraudulent transfer under U.S.C. § 548 and can be avoided by the bankruptcy trustee. Counts II and III allege negligent/wanton and bad faith failure to investigate and settle against ALFA. Counts IV and V alleged suppression and conspiracy to deceive, suppress and defraud against the individual defendants and ALFA. Count VI is a Legal Liability Services Action against the individual defendants under the Alabama Legal Service Liability Act ("ALSLA").

## LEGAL STANDARD

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint only

requires "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2]  The Supreme Court explained in *Twombly* that a complaint "does not need detailed factual allegations," but that the allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.  Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Id*. at 556 (quotation marks omitted).  The Supreme Court clarified the *Twombly* standard in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009): "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  The Eleventh Circuit has explained that the *Twombly*/*Iqbal* rule "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Watts v. Fla. Int'l. Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1937.

## DISCUSSION

The individual defendants argue that the complaint fails to state a claim upon which relief may be granted because the plaintiff lacks standing under the ALSLA; because of the Covenant Not to Sue; because Counts II and III do not state a cause of action against them; because Counts IV and V are barred by the ALSLA; and due to estoppel and accord and

---

[2] The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*.  *See Bell Atl. Corp.*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*, 127 S. Ct. at 1969.

satisfaction.  (Doc. 11 pgs. 1-2).  These arguments are addressed in turn.

### A. Standing under the ALSLA

The individual defendants argue that the plaintiff does not have standing under the ALSLA because he was not their client.  Under the ALSLA a "legal service provider"[3] "owes no duty except that arising from contract or from a gratuitous undertaking." *Peterson v. Anderson*, 719 So. 2d 216, 218 (Ala. Civ. App. 1997) (quoting *Shows v. NCNB Nat. Bank of N. Carolina*, 585 So. 2d 880, 882 (Ala. 1991)).  Because the plaintiff was not their client, the individual defendants conclude that he cannot bring suit under the ALSLA.  This argument fails, however, under the bankruptcy code.  When a debtor files for bankruptcy, "[a] bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted had it not been thrown into bankruptcy." *O'Halloran v. First Union Nat. Bank of Florida*, 350 F.3d 1197, 1202 (11th Cir. 2003) (citing 11 U.S.C. §§ 541–42).  Therefore, if Murphree had standing, then so does the plaintiff as the trustee of the bankruptcy estate.  Recognizing this, the individual defendants withdrew their lack of standing argument as a basis for dismissal.  (Doc. 18 pg. 2).

### B. Covenant Not to Sue as a Release/Waiver

The individual defendants contend that the complaint should be dismissed because the Covenant Not to Sue acts as a release and/or waiver.  The Covenant Not to Sue explicitly provides  that Murphree "will not institute, prosecute or in any way aid in the institution or prosecution of any claim, demand, action, or cause of action for damages or costs resulting or arising from the verdict of from any bankruptcy action." (Doc. 1-8).  Alabama law states:

> [A]bsent fraud, a release, supported by valuable consideration and unambiguous in meaning, will be given effect according to the intention of the parties from

---

[3] A legal service provider is defined as "[a]nyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama. " Ala. Code § 6-5-572(2).

what appears in the four corners of the document itself; and parol evidence is not admissible to impeach or vary its terms.

*Ex parte Renovations Unlimited, LLC,* 59 So. 3d 679, 683 (Ala. 2010) (internal quotations omitted).

However, Count I alleges that the Covenant Not to Sue is a fraudulent transfer under 11 U.S.C. § 548 and, thus, voidable by the bankruptcy trustee. Additionally, the complaint alleges that fraud negates the Covenant Not to Sue.

### 1. Fraudulent Transfer

Section 548 of the Bankruptcy code provides:

> The trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C. § 548(a)(1). The plaintiff plead that the covenant was signed within two years of the bankruptcy filing, that Ms. Murphree did not receive reasonably equivalent value in exchange and that the she was insolvent at the time of the transfer or immediately after. (Compl. ¶ 41).[4]

The individual defendants "do not contest here that the release would constitute a

---

[4] The plaintiff also alleges that Murphree was "induced by ALFA and [the individual defendants] to make this transfer with the actual intent to hinder, delay, or defraud [Murphree's] primary creditor, Willow Jo Cameron." (Compl. ¶ 14). The plaintiff does not further address § 548(a)(1)(A) in his brief. The individual defendants argue that because Murphree allegedly did not know she had any causes of action against the defendants, she could not have been "hindered, delayed or defrauded," 11 U.S.C. § 548(a)(1)(A). What an interesting argument! Because of its conclusion on § 548(a)(1)(B), the court need not reach this question.

'transfer' under the Bankruptcy Code." (Doc. 18 pg. 10).[5] They also do not challenge the time requirement or the insolvency of the plaintiff. Instead, they contend that the transfer was, as a matter of law, for reasonably equivalent value. (Another interesting argument!)

In a bankruptcy proceeding, "state law defines the scope and existence of [a] property interest." *In re Schweizer*, 399 Fed. App'x 482, 484 (11th Cir. 2010) (citing *In re Sinnreich*, 391 F.3d 1295, 1297 (11th Cir. 2004) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979))). In Alabama, a release acts to extinguish a party's "cognizable claim[s]." *Ex parte Renovations Unlimited, LLC*, 59 So. 3d 679, 683 (Ala. 2010). Based on this, the individual defendants analogize the effect of the Covenant Not to Sue to an entry of judgment. (Doc. 18 pg. 13). The Fifth Circuit has held that a state court's entry of judgment "conclusively established that the Debtors' claims … had no merit." *Matter of Besing*, 981 F.2d 1488, 1496 (5th Cir. 1993). Thus, the claims were worthless, and "the Texas court's disposition of the Debtors' claims constituted a transfer for reasonably equivalent value as a matter of law." *Id*. The defendants contend that the same reasoning should apply to a release under Alabama law.

The individual defendants' attempt to liken an entry of judgment to a contractual release is unpersuasive. They overlook the Fifth Circuit's statement that "[w]e emphasize that our decision addresses *only* the disposition of state law claims *by a state tribunal*." *Id*. (emphasis added). The court stated "under law, the dismissal constituted *an adjudication on the merits* of the Debtors' claims." *Id*. at 1495 (emphasis added). "The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]." *Id*. at 1496

---

[5] A transfer includes "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with … (i) property … or (ii) an interest in property." 11 U.S.C. § 101(54)(D); *see also In re e2 Commc'ns, Inc.*, 320 B.R. 849, 855 (Bankr. N.D. Tex. 2004) ("[T]he release of claims provided by § 11(a) of the CRA is itself a transfer of property of the estate that is subject to being avoided under applicable law.").

(quoting *In re G & R Mfg. Co.*, 91 B.R. 991, 994 (Bankr. M.D. Fla. 1988)). Because of this concern for second guessing a state judiciary, the court "decline[d] the Debtors' invitation to 'look behind' the state court judgment and make an independent evaluation of the claims." *Id*.

Avoiding a contractual release, on the other hand, does not require the court to "look behind" a state tribunal. No state court has addressed the merit of the plaintiff's claims against the individual defendants, let alone found them to be worthless. Rather, the individual defendants themselves addressed the value of the plaintiff's claims.[6] According to the individual defendants, because of their conclusion, the value of the plaintiff's claims, as a matter of law, was "zero." (Doc. 18 pg. 14). They argue, in effect, for the court to give *res judicata* effect to their own determination of the viability of the plaintiff's claims. This court declines to give the individual defendants the same deference due a state tribunal.

After *Busing*, courts have implicitly reached similar conclusions. *See In re e2 Commc'ns, Inc.*, 320 B.R. 849 (Bankr. N.D. Tex. 2004); *In re NuMed Home Health Care, Inc.*, 326 B.R. 859, 867 (Bankr. M.D. Fla. 2005). After relying on *Busing* to find that the release of a claim was a transfer under § 548, the *Communications, Inc.* court stated "what is relevant to a fraudulent transfer claim is … how much value the Debtor received in exchange for the property transferred (did the Debtor receive reasonably equivalent value in exchange for the property transferred?)." 320 B.R. at 858. In denying summary judgment, the court did not assume that any contractual release between two parties must necessarily be for reasonably equivalent value. Instead, it found "a genuine issue of material fact exists as to whether [releases in] the CRA transaction [are] avoidable." *Id*. at 859.

The court disagrees with the individual defendants' assertion that they acquired the Covenant Not to Sue with reasonably equivalent value as a matter of law. Rather, whether the

---

[6] They valued them at $1,200. (Doc. 1-8).

claims were transferred for reasonably equivalent value is "largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts." *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593-94 (11th Cir. 1990) (internal citations omitted).[7]

### 2. Fraud

The plaintiff has additionally pleaded that the individual defendants suppressed material facts in attaining the Covenant Not to Sue. "It is a well-established principle in Alabama that a buyer alleging that he was induced by fraud to enter into a contract may rescind by restoring benefits and recover payments, or affirm, retain benefits, and sue in deceit for damages." *Lacey v. Edmunds Motor Co.*, 113 So. 2d 507, 510 (Ala. 1959).

The individual defendants argue, however, that "any fraud by these [d]efendants must have specifically related to the execution of the release itself. None of the underlying allegations relating to the alleged ALSLA violations are at issue." (Doc. 18 pgs. 7-8). They quote Alabama case law stating that "[f]raud in the inducement consists of one party's misrepresenting a material fact *concerning the subject matter of the underlying transaction*." *Anderson v. Amberson*, 905 So. 2d 811, 815 (Ala. Civ. App. 2004) (emphasis added) (internal citations omitted). While nominally correct, this argument fails.

The individual defendants aver that the plaintiff's only allegation of fraud relating to the release contract is that they failed to inform Ms. Murphree of potential legal claims against themselves and that no legal duty exists requiring them to disclose such claims. On the contrary, the plaintiff specifically alleged that the individual defendants misrepresented a material fact. The plaintiff plead that Walker explicitly told Murphree that ALFA had tendered a policy limits offer which Cameron rejected. (Compl. ¶ 31). Yet, the complaint alleged that Walker never told Murphree of Cameron's policy limits demands or ALFA's refusal to tender a policy limits offer.

---

[7] If not a factual issue, it is more likely a legal issue in favor of the plaintiff.

(Compl. ¶¶ 17-24). In other words, the plaintiff has alleged that, in order to secure a release of liability arising from their legal representation, the individual defendants misrepresented how they conducted said legal representation. Whether these allegations of misrepresentation and suppression also relate to the ALSLA action is irrelevant. They are still "material fact[s] concerning the subject matter of the underlying transaction." *Anderson*, 905 So. 2d at 815.

Along with § 548 fraudulent transfer, the plaintiff has sufficiently alleged that the individual defendants committed fraud in obtaining the Covenant Not to Sue. Thus, Count I will not be dismissed.

### C. Failure to Investigate and Settle

Next, the individual defendants contend that the Counts II and III do not assert a claim against them. The plaintiff agrees. (Doc. 17 pg. 9). Rather, Count II and III are claims asserted against ALFA for negligence/wanton and bad faith failure to investigate and settle.

### D. Suppression and Conspiracy

The individual defendants argue that the Counts IV and V for suppression and conspiracy fall under the ALSLA. *See Borden v. Clement*, 261 B.R. 275, 282 (N.D. Ala. 2001) (citing Ala. Code § 6–5–573) ("Only one form and cause of action may be brought in the courts of Alabama against legal service providers: a legal service liability action.") *aff'd*, 35 Fed. App'x 855 (11th Cir. 2002). The plaintiff agrees that these claims against the individual defendants should be dismissed. However, the plaintiff requests leave to amend the complaint "to incorporate all of the allegations contained in the Suppression and Conspiracy counts." (Doc. 17 pg. 10).

The individual defendants contend that this is the plaintiff attempting to "'bootstrap' causes of action for suppression and/or conspiracy into [the ASLSA] claim." (Doc 18 pg. 4). For this contention, they cite the ALSLA's preclusion of other causes of action. *See* Ala. Code §

10

6-5-573; *Free v. Lasseter*, 31 So. 3d 85, 89 (Ala. 2009); *Guyton v. Hunt*, 61 So. 3d 1085, 1088 (Ala. Civ. App. 2010).

While Counts IV and V are due to be dismissed as against the individual defendants, the plaintiff will be granted leave to amend the complaint to incorporate any factual allegations relevant to his other claims, including the legal malpractice claim under the ALSLA. Under the ALSLA, the plaintiff must demonstrate that the legal service provider breached "the standard of care applicable." Ala. Code § 6-5-572(2). The standard or care is defined as the "that level of such reasonable care, skill, and diligence as other similarly situated legal service providers in the same general line of practice in the same general locality ordinarily have and exercise in a like case." Ala. Code § 6-5-572(3)(a). To the extent that the factual allegations contained in the suppression and conspiracy counts indicate a breach of this standard, the plaintiff will be granted leave to amend the complaint to include them.

### E. Estoppel and Accord and Satisfaction

It is not clear from the Motion to Dismiss or Reply Brief on what exactly the individual defendants are basing these affirmative defenses. The Motion merely states "[f]or that the plaintiff's claims are due to be dismissed due to … estoppel and 'accord and satisfaction.'" (Doc. 11 pgs. 1-2). In order to survive a motion to dismiss, a plaintiff is not required to "negate an affirmative defense in [their] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). Dismissal is appropriate only "if an affirmative defense … appears on the face of the complaint." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

### 1. Estoppel

Under Alabama law, estoppel requires:

(1) The person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on; (2) the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon that communication; and (3) the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.

*Gen. Elec. Credit Corp. v. Strickland Div. of Rebel Lumber Co.*, Inc., 437 So. 2d 1240, 1243 (Ala. 1983). The face of the complaint lacks a basis for the first two elements. First, the plaintiff asserts that Ms. Murphree did *not* have knowledge of the all the facts because the individual defendants misrepresented them. (Compl. ¶¶ 31-32). Further, the complaint alleges that it was the individual defendants who were knowledgeable and misled Ms. Murphree. *Id.* The pleadings do not establish this defense, so dismissal is not warranted.

### 2. Accord and Satisfaction

"The elements necessary to establish accord and satisfaction are as follows: (1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds, and (4) consideration." *Austin v. Cox*, 492 So. 2d 1021, 1022 (Ala. 1986) (internal citations omitted). The plaintiff has alleged, specifically, that there was not a "meeting of the minds." *Id.* The complaint avers that the individual defendants specifically withheld material information in order to procure Murphree's signature. Furthermore, the meeting of the minds requirement "is a factual question concerning [] subjective intent." *Austin*, 492 So. 2d at 1023. Thus, accepting all the plaintiff's allegations as true, accord and satisfaction does not defeat the plaintiff's claims.

DONE and ORDERED this the 10th day of December, 2013.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**